THE PEOPLES' TRUST COMPANY

*vs.*

MOUNT WALDO GRANITE WORKS,

and Its Trustees in Bankruptcy,

and THE INGERSOLL SARGENT DRILL COMPANY.

Waldo.    Opinion December 13, 1918.

*Right of holders of bonds to enforce payment of same. Rule where the bonds were given as collateral security. Right of holders of such bonds to have trustee under the trust mortgage proceed to enforce the conditions of the mortgage. Rights under trust mortgage where the records fail to show that same has been properly recorded.*

This is a bill in equity, brought for the purpose of foreclosing a mortgage alleged to have been given by the Mount Waldo Granite Works to the Peoples' Trust Company, a banking corporation of New York.

The bill alleges the issuance by the Mount Waldo Granite Works of $150,000 of its negotiable bonds, secured by a mortgage upon its plant and property. At the time the suit was brought the bonds were held by a number of banks in Maine as collateral security for the notes of the Mount Waldo Granite Works.

All the records of the corporation were destroyed by fire; but in the affidavit of Mr. Albert Pierce, clerk and treasurer of the corporation, used by agreement as his testimony, he distinctly states that every necessary vote was passed by the corporation and recorded. We also have before us a copy of the trust deed which recites that the maker, the Granite Works, passed the necessary votes.

The trust deed purports to convey personal property as well as real property, but there was no proof of the record of the deed in the town of Frankfort, where the personal property was situated.

*Held:*

1.   That these facts constitute sufficient evidence of authority.

2.   That a party holding bonds as collateral for the security of his debt is, to the extent of his debt, at least, subrogated to such an interest in the property mortgaged to secure the bonds as will enable him to require the trustee, when authorized by the mortgage, to foreclose the mortgage for payment of his debt.

3.  If there is personal property described in the trust deed, not forming a part of the realty, that such personal property cannot be foreclosed under the mortgage, and that what articles are so attached to the realty as to become real estate, and what so separated as to retain their character as personal property, must be ascertained.

Bill in equity to foreclose a trust mortgage given by the Mount Waldo Granite Company to the Peoples' Trust Company of the State of New York. Cause was heard upon bill, answer and replication. Judgment in accordance with opinion.

Case stated in opinion.

*A. S. Littlefield,* for plaintiff.

*E. E. Richards, and Arthur Ritchie,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

SPEAR, J. This is a bill in equity, brought for the purpose of fore-closing a mortgage alleged to have been given by the Mt. Waldo Granite Works to the Peoples' Trust Company, a banking corporation of New York.

The bill alleges the issuance by the Mt. Waldo Granite Works of $150,000 of its negotiable bonds, secured by a mortgage upon its plant and property. At the time the suit was brought the bonds were held by a number of banks in Maine as collateral security for the notes of the Mt. Waldo Granite Works.

The plaintiff claims two defaults in the conditions of the mortgage given to secure the bonds; first, a failure by the Granite Works to pay the coupons on said bonds, and, second, a failure to pay the taxes duly assessed thereon. On July 14, 1901, the Mt. Waldo Granite Company, by its officers, proceeded to execute a deed of trust to the Peoples' Trust Company to secure the payment of said bonds, ratable and equally, without preference one over another, and also to secure the coupons attached thereto. The indenture of mortgage was recorded in the Registry of Deeds for the County of Waldo, and pur-ported to mortgage the property, real, personal and mixed, and all fixtures, rights, privileges, franchises and easements, and rights under the lease of all and every kind owned and used by the party of the first part in its business of quarrying and selling granite, as described

in said mortgage. Among the described real estate are the quarries, quarry-fixtures, railroad, engines and engine-houses, blondin cable, boarding-houses, stables, shops and dwelling-houses of the Mt. Waldo Granite Works. On another lot of real estate was conveyed the railroad, and blocks with storehouses and derricks thereon belonging to said corporation, the real estate being subject to certain agreements made by the said corporation, duly recorded. The mortgage also covered all the derricks, engines, cars, implements, tools and apparatus of every kind and nature now owned or which may hereafter be owned by said company, used or to be used in quarrying, finishing and shipping granite. The mortgage also provided that whenever any of the property, fixtures or implements described shall have become destroyed or worn out they should be replaced by the mortgagor, so that, at the end of the term the property should be in the same condition that it was at the date of the deed. It was further provided that, upon default of payment of interest upon the aforesaid bonds, or any of them, such default continuing for ninety days thereafter, and payment of said interest having been demanded and refused, all of said bonds should, at the option of the respective owners, become immediately due and payable, principal and interest, and that the Mt. Waldo Granite Works agreed to pay and discharge all taxes, assessments or other charges that are now a lien, or hereafter shall be legally levied, assessed or imposed, become a lien upon the premises or any part thereof. It is agreed that default was made in the payment of coupons attached to said bonds for July, 1909 and all subsequent coupons, and that in January, 1916, formal demand was made for payment of coupons attached to said bonds and payment refused; that the holders of all of said bonds requested the Peoples' Trust Company to foreclose said mortgage.

The Mt. Waldo Granite Works has been adjudicated a bankrupt in the District Court of the United States for the District of Maine, and said court, on petition therefor, authorized and assented to this suit being brought for the foreclosure of said mortgage in this court, and that this court may take charge and possession of said mortgaged property for the purpose of foreclosure.

The plaintiff filed a supplemental bill alleging, in substance, that the Ingersoll-Sargent Drill Company, a corporation under the laws of the State of New York, claim to have a mortgage for an air compressor,

which it claims was a part of the fixtures and property included in the description in said mortgage, and asks that said Ingersoll-Sargent Drill Company be made a defendant.    Service was made upon said company, and it appeared and filed an answer, claiming said property by virtue of a mortgage given by the Mt. Waldo Granite Works. The mortgage, of the Mt. Waldo Granite Works as stated above, was recorded in the Registry of Deeds, but was not recorded in the town clerk's office in the town where the corporation has its home and its property.

Under this state of facts defendants assert three defenses which are entitled to consideration.    Many minor questions were raised to which it is not necessary to allude.

First:    The defendant claims that there is not sufficient proof that the mortgage and bonds were duly authorized by the corporation—the Granite Works.    It appears that all the records of the corporation have since been destroyed.    In the affidavit of Mr. Albert Pierce, clerk and treasurer of the corporation, which the parties agree is to be taken as his testimony, he distinctly states that every necessary vote was passed by the corporation and recorded.    Further than that, we have before the court, according to the stipulation of the parties, a copy of the trust deed, and that recites that the maker, the Granite Works, passed the necessary vote.

It is the opinion of the court, therefore, that the foregoing facts furnish sufficient evidence that the trust deed and bonds were properly authorized by the Granite Works.

Second:    The defendants contend that the mortgage cannot be foreclosed by the plaintiff because the bonds are issued as collateral security for the Granite Works' notes.    There is no merit in this defense.    The mortgage expressly provides for the proceedings herein pursued.    The whole purpose of the trust mortgage was to secure the holders of these bonds.    The banks which hold them as collateral are bona fide holders for the purposes of foreclosure, as much as though they had purchased the bonds, instead of loaning money on them. In New Memphis Gas Light Company cases, 105 Tenn., 268; 80 Am. St. Rep., 880, this principle is affirmed as follows: "While it is true the parties taking bonds as collateral security for preexisting debts, under the rule then prevailing in this State, were not holders for value in due course of trade, yet it being clear that the debts they were

given to secure were honest debts of the company, created by its making the very improvement the bonds were issued to pay for, the creditors receiving them as security were bona fide holders, and as such entitled to full protection save as against such equities as might be inherent in the bonds."

The property in the mortgage is the real security. The bonds are merely issued for the convenience of enabling the mortgagor to obtain money, from time to time, as wanted, from several sources instead of but one. The only possible way in which they can realize anything on the collateral for their respective loans is by enforcing payment of the bonds; and the only way they can enforce payment on the bonds of a bankrupt corporation is by foreclosure of the mortgage and a sale of the mortgage property given to secure the payment of the bonds. The banks which hold all these bonds have requested the trustee to pursue the prescribed course which, it would seem, is not only reasonable but the only effective way they could adopt to realize upon their securities, as the bonds of a concern in bankruptcy can have no market value. In fact, the banks must have a right to do this, otherwise, if the trustee should decline to proceed, suo moto, to foreclose, then the holders of the collateral would be helpless, and their security might become worthless. Such should not be the status of the law, nor is it. The different rights and duties of a party holding negotiable paper as security are discussed in detail in a note to the case of *Griggs* v. *Day*, 32 American State Report, 704, at page 711. From the rules of law enunciated in this note it seems clearly deducible, that a party holding defaulted bonds as collateral for the security of his debt, is, to the extent of his debt, at least, subrogated to such an interest in the property, mortgaged to secure the bonds, as will enable him to require the trustee, when the mortgage authorizes it, to foreclose the mortgage for the payment of his debt.

The following rule is specifically laid down in a New York case, and found in principle in many other cases.

"As the holder of collateral security is entitled to its possession and, to the extent of his interest, is substantially the owner thereof, he must to a certain extent at least assume the duties of ownership; and furthermore must protect the interests of his obligor as well as his own, because the latter by giving the collateral security, has parted with the power to protect himself. The contract carries with it the

implication that the security shall be made available to discharge the obligation." *Wheeler* v. *Newbald,* 16 N. Y., 396. *Griggs* v. *Day,* 32 American State Report, Note 718. See also R. C. L., 21 Pledge, 24.

We are of the opinion, therefore, that under the facts in this case it was not only the right, but the duty of the trust company, upon the request of the bond-holders, to proceed to foreclose the mortgage and apply the proceeds of the foreclosure to the payment of the bonded debts.

Third: · The Trust Deed purports to convey personal property as well as real property, and there is ample language in the deed to cover personal as well as real.

Now it appears, and undoubtedly is the fact, that the mortgage was not recorded in the town of Frankfort. The records of Frankfort have since been destroyed by fire. The defendant therefore says that all personal property described in the Trust Deed which did not become a part of the reality as a part of the plant, did not pass under the deed as against the unsecured creditors of the Granite Works. This point is not without merit. The answer that, inasmuch as there is no positive evidence that the mortgage was not recorded in Frankfort, the court can and should find that it was so recorded, does not impress us as sufficient. The evidence points the other way. There is no minute of the Clerk "noting on the mortgage the time when it was received" as required by R. S., Chap. 96, Sec. 2. The presumption is that the clerk observed the law and the omission becomes evidential.

Upon the conclusion that it was not recorded in the Town Clerk's office, it follows that, if there is personal property described in the Trust Deed, which cannot be held by the court as forming a part of the realty, then that personal property cannot be foreclosed under the mortgage.

Unquestionably a large part of that property did form a part of the plant and became real estate under the decisions in this State. But it does not seem to us that this court from only the description of the personal property and its value, as given in the record, can safely determine just what personal property was covered by that mortgage as against the creditors of the Granite Works, who are entitled to share in the personal property not so covered.

The rules of law governing the question as to when personal property becomes a part of the realty are not in dispute in this State. Our court has defined them with clearness. It is applying the rules to the particular article that is the difficult matter.

It should appear in evidence that the article is physically annexed, at least by juxtaposition to the realty or some appurtenance thereof; that it is adapted to and usable with that part of the realty to which it is annexed; and that it was annexed with the intention on the part of the person making the annexation to make it a permanent accession to the realty. *Hayford* v. *Wentworth*, 97 Maine, 347. As to many of the articles in the record before us none of these facts appear.

It will not be claimed we assume that the articles of personal property that are nowhere near the plant, have never been connected with it, although perhaps intended to be used in case of a breakdown to repair the plant, are in fact a part of the plant. We, accordingly, think the bill and supplemental bill should be sustained as to the first and second contentions, and remanded to the sitting Justice upon the third proposition, to be heard by him, or sent to a master to ascertain and report to him, what articles or classes of personal property enumerated in this mortgage have become parts of the real estate, and held as such under the mortgage, and what articles or classes, are so disconnected with the real estate, and use thereof, and are so separated therefrom, as to retain their character as personal property.

*So ordered.*